# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

RANDALL PARSONS,  :
                                       :  Civil No. 3:18-cv-1406
          **Petitioner**    :

                                         :  **(Judge Mariani)**
        **v.**                 :

                                         :
**Warden CATRICIA HOWARD,**   :

                          :
        **Respondent**     :

## MEMORANDUM

Petitioner, Randall Parson, a federal inmate currently incarcerated in the Allenwood

Federal Correctional Institution, White Deer, Pennsylvania, filed the instant petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1, petition). He has also filed motions to

expedite. (Docs 11, 12, 15). and a motion to amend petition in light of the First Step Act of

2018. (Doc. 16). Petitioner asserts that members of his Unit Team abused their discretion

under 18 U.S.C. § 3621(b) by limiting his placement in a Residential Reentry Center ("RRC")

to four months. For the following reasons, Petitioner's habeas petition and motion to amend

will be denied and his motions to expedite will be dismissed.

## I.    Standard of Review

The habeas statute upon which Petitioner relies to challenge the timing of his pre-

release placement, 28 U.S.C. § 2241, unlike other federal habeas statutes, "confers habeas

jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the

execution of his sentence." *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001). A habeas petition filed pursuant to 28 U.S.C. § 2241 is the appropriate means for a federal inmate to challenge a BOP decision to limit or exclude their placement in an RRC. *See Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 243–44 (3d Cir. 2005).

## II.  **Background**

On April 21, 2015, Parsons was sentenced to ninety months of imprisonment, and three years of supervised release, in the United States District Court for the Eastern District of Pennsylvania for violating 18 U.S.C. §1951, Hobbs Act Robbery. (Doc. 8-1 at 4, Sentence Monitoring Computation Data).

On December 8, 2017, Parsons' unit team recommended 181 days (6 months) to 270 days (9 months) of RRC placement, offering the following specific release preparation:

He has not provided a release address but will secure employment while confined at the RRC. There are no medical or psychology concerns. He has completed the Drug Education class as well as the Non-Residential Drug Treatment program. He has completed multiple Education classes and Vocational Training programs. He has also completed two of his financial Assessments. Inmate Parsons has not received an incident report since 2014. Therefore, the Unit Team is of the opinion, a maximum of 270 days placement is of sufficient duration to provide the greatest likelihood of successful reintegration into the community. Additionally, he does not meet the Walsh Act criteria.

(Doc. 8-1 at 6, Institutional Placement for CCC Placement). The form was forwarded to Residential Reentry Manager (RRM) Chad Fultz. *Id.* The recommended range is what the unit team believed would allow the RRM to match population needs with budgetary and RRC

- 2 -

bed space resources near Parsons' release destination. *Id.* The RRM determined and assigned Petitioner an RRC placement date of June 29, 2019. *Id.*

On July 16, 2018, Petitioner filed the above captioned action, requesting to be placed in an RRC facility for seven months "as an incentive for all of the skill development programs he completed pursuant to Title 343 U.S.C. §60541(a)(2)A), or order the BOP to reconsider the unit team's placement recommendation of 6 to 9 months RRC placement and disregard former director's directive stating that 4 months RRC placement is the new normal RRC placement time for prisoners, a command that has no doubt impeded his RRC placement." (Doc. 1 at 8). Parsons argues that the recommended RRC time that he received, 181 (6 months) to 270 days (9 months), violates the terms of the SCA. *Id*

On January 10, 2019, Petitioner filed a motion to amend in light of the First Step Act of 2018, in which Petitioner claims that the language of the Act "now states; the BOP 'shall' transfer inmates to pre-release custody when eligible, in contrast to the old language that states that the BOP 'shall consider' an inmate for pre-release custody when eligible and 'may' designate inmate to a CCC and 'may' place inmates in a CCC for more than the last 10 percent of the term or more than six months when appropriate." (Doc. 16). As such, Petitioner requests "the BOP to transfer movant immediate to RRC placement or home confinement as directed by the First Step Act of 2018, or grant to movant whatever relief the District Court may deem just and fair to allow movant the greatest likelihood of a successful reentry back into the community." *Id.*

- 3 -

## III.    Discussion

The Court notes three statutes govern the discretion of the Bureau of Prisons (BOP) to place inmates in particular facilities: 18 U.S.C. § 3621(b) grants the BOP the authority to designate places of confinement; 18 U.S.C. § 3624 (a part of the Second Chance Act of 2007) authorizes the BOP to provide post-imprisonment rehabilitation services in community corrections facilities; and 34 U.S.C. § 60541 (a part of the First Step Act of 2018) permits the BOP to grant prisoners who participate in reentry and skills development programs the maximum allowable period in a community corrections facilities. It also allows the BOP to place elderly prisoners in home confinement.

More specifically, § 3621(b) gives the BOP the authority and discretion to designate a prisoner's place of confinement. Under § 3621(b), the BOP:

> may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable.

18 U.S.C. § 3621(b) (2012); *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 239 (3d Cir. 2005). In making this determination, the BOP must consider "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence ... and (5) any pertinent policy statement issued by the Sentencing Commission[.]" 18 U.S.C. § 3621(b) (2012).

The Second Chance Act directs "a shift from policing those on parole to rehabilitating them," and places on the "parole system ... an increasing special obligation to help federal offenders successfully reenter into society." *United States v. Wessels*, 539 F.3d 913, 915 (8th Cir. 2008) (Bright, J., concurring). It authorizes funding for drug treatment, job training and placement, educational services, and other services or support needed to rehabilitate prisoners and reduce recidivism. *Id.* The Act also addresses placement in community corrections facilities such as halfway houses. 18 U.S.C. § 3624(c) (2012). It grants the BOP Director the discretion to place a prisoner in a community corrections facility for up to twelve months, instead of limiting that time to six months as permitted by the prior law. *Id.* The Act authorizes the Director, "to the extent practicable, ... to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." *Id.* It also directs the BOP to issue new regulations to ensure that placements in community correctional facilities are "(A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community." *Id.* § 3624(c)(6).

The First Step Act focuses on rehabilitation, reintegration, and sentence reduction. It requires the BOP to "provide incentives for prisoner participation in skills development programs." 34 U.S.C. § 60541(a)(1)(G). At the discretion of the BOP, such incentives may include "the maximum allowable period in a community confinement facility" and, other than a reduction in the prisoner's term of imprisonment, "such other incentives" as are considered

appropriate. *Id.* § 60541 (a)(2). It also potentially expands the release opportunities available to elderly prisoners:

> The Attorney General shall conduct a pilot program to determine the effectiveness of removing eligible elderly offenders from a Bureau of Prisons facility and placing such offenders on home detention until the expiration of the prison term to which the offender was sentenced.
>
> ....
>
> In carrying out a pilot program ... the Attorney General may release some or all eligible elderly offenders from the Bureau of Prisons facility to home detention.

*Id.* § 60541(g)(1).

The Supreme Court has consistently held that a prisoner has no constitutional right to be confined in a particular place. *See McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons.").

The Attorney General—and by delegation the BOP—has exclusive authority and discretion to designate the place of an inmate's confinement. Moore v. United States Att'y Gen., 473 F.2d 1375, 1376 (5th Cir. 1973); *Ledesma v. United States*, 445 F.2d 1323, 1324 (5th Cir. 1971). "[A]ny approach that puts the judicial branch in charge of designating the place of confinement for a federal prisoner—no matter how well justified on utilitarian

grounds—collides with 18 U.S.C. § 4082(b), which gives the Attorney General unfettered discretion to decide where to house federal prisoners." *In re Gee*, 815 F.2d 41, 42 (7th Cir. 1987).

Moreover, a petitioner complaining about a BOP assignment is not entitled to judicial relief for an alleged "violation of his Fifth Amendment right to due process because 'the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest'." *Assaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir. 2004) (quoting *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999) (citing *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981))); *accord Nativi–Gomez v. Ashcroft*, 344 F.3d 805, 808 (8th Cir. 2003); *see also Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003) ("Since discretionary relief is a privilege ..., denial of such relief cannot violate a substantive interest protected by the Due Process clause."); *cf. Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[A] statute which 'provides no more than a mere hope that the benefit will be obtained ... is not protected by due process.' ") (alteration in original) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11 (1979)).

After reviewing Parsons' petition and the applicable statutes, the Court finds that BOP has the discretion to determine if, and when, to assign Petitioner to home confinement. The BOP does not owe Petitioner a duty to place Petitioner in home confinement. Consistent with 18 U.S.C. § 3621(b), Parsons was individually considered under the factors relevant to RRC placement. The recommended range is what the unit team believed would allow the RRM to

- 7 -

match population needs with budgetary and RRC bed space resources near Parsons' release destination. Parsons' disagreement with the BOP's RRC placement recommendation does not establish a constitutional violation, as nothing in the SCA or § 3621(b) entitles an inmate to any guaranteed placement in an RRC. *See Woodall*, 432 F.3d at 244– 51 (holding in exercising its discretion to make halfway house placement decisions, the Bureau must consider the factors set forth in § 3621(b); "[h]owever, that the [Bureau] may assign a prisoner to a halfway house does not mean that it must."); *Levine v. Apker*, 455 F.3d 71, 80 (2d Cir. 2006) (finding Congress's use of the language "may designate" in § 3621(b) endows the BOP with broad discretion); *see Beckley v. Miner*, 125 F. App'x 385, 389 (3d Cir. 2005) (holding "[i]t is well settled, and the parties agree, that the Bureau has nearly exclusive jurisdiction to classify and transfer prisoners.").

Based on the foregoing, this Court finds that the BOP's placement decision does not violate the Constitution, laws or treaties of the United States, and is not an abuse of discretion. Thus, this Court will deny the § 2241 Petition, Petitioner's motion to amend and dismiss Petitioner's motions to expedite.

A separate Order shall issue.

Date: February 6 2019

Robert D. Mariani
United States District Judge

- 8 -